**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**


UNITED STATES OF AMERICA,

       Plaintiff,

    -vs-                                      CRIMINAL No. 10-1178 LH

RAUL CRUZ,
aka RAUL CRUZ-BERMUDEZ,

       Defendant.


## <u>MEMORANDUM OPINION AND ORDER</u>

On September 7, 2010, Defendant Raul Cruz filed a Motion to Disclose Confidential Informant and Memorandum in Support Thereof (Doc. 26), seeking the disclosure of the identity of the confidential informant ("CI") whose information was used to obtain the warrant to search Defendant's home on March 29, 2010. Defendant also filed a Motion in Limine Concerning Field Tests of Alleged Controlled Substances (Doc. 27). On September 12, 2010, the United States filed a Notice of Intent to Offer Evidence Pursuant to Rule 404(b) and Request for Pretrial Ruling on the Government's Request to Admit Evidence (Doc. 34). The United States seeks a pretrial ruling on the admissibility of evidence related to an alleged controlled drug transaction between a confidential informant and Defendant that preceded the events alleged in the indictment. The Court, having considered the motions, briefs, arguments, relevant law, and otherwise being fully advised, concludes that Defendant's motion to disclose the CI's identity should be denied, Defendant's motion in limine should be granted in part, and the United States' motion on the admissibility of Rule 404(b) evidence should be denied.

I.      **BACKGROUND**[1]

Between January and March 2010, a confidential informant ("CI") advised Detective Oscar Villegas, Middle Rio Grande Valley Drug Task Force, that a Raul Cruz sold methamphetamine from his residence at 2519 Ghost Ranch Street SW, Albuquerque ("the Ghost Ranch home"), and that Raul Cruz drove a blue Dodge Durango.  The CI said he/she was present in the home when Raul Cruz conducted the methamphetamine sales.

Detective Villegas and other task force members subsequently conducted surveillance of the Ghost Ranch home.  Detective Villegas observed a blue Dodge Durango parked at the residence, and observed individuals enter the home and leave approximately 5-10 minutes later, which he believed, based on his training and experience, was consistent with drug trafficking.  Detective Villegas took a photo of the Hispanic male driving the Dodge Durango.  The CI later identified the Hispanic male as Raul Cruz.  Detective Villegas' law enforcement queries revealed Raul Cruz to be Raul Cruz-Bermudez who used several aliases and had an outstanding felony warrant for trafficking meth out of Georgia.  The CI identified a driver's license photo of Raul Cruz-Bermudez as Raul Cruz.

A few days or weeks later,[2] Detective Villegas set up a controlled purchase using the CI and another detective.  Detectives Villegas and Greg Cunningham searched the CI and his/her vehicle to assure that he/she was not in possession of any money or contraband.  Detective Villegas gave

---

[1]The following factual allegations are made by the Government in the Criminal Complaint filed in this case (Doc. 1) and the Government's Rule 404(b) Notice (Doc. 34).  At this point, they are proffered facts, not evidence.  Should the evidence at trial not support the proffered facts, the Court may revisit its rulings.

[2]The Government does not want to say when the controlled buy occurred in order to protect the CI's identity.  The Government asserts that the controlled buy occurred no more than a few weeks prior to the execution of the search warrant.

the CI an amount of currency to purchase an amount of methamphetamine.  The detective maintained constant surveillance of the CI's vehicle while en route to the Ghost Ranch home and watched the CI walk to the front door, enter the home, and leave five to ten minutes later.  The CI met the detectives at a pre-determined location afterwards where the CI gave the agents a package of a crystal like substance that field tested positive for methamphetamine.

On March 29, 2010, Detective Villegas obtained a search warrant for the Ghost Ranch home.  During the search, three Hispanic males were detained, including Raul Cruz who had two different state drivers' licenses with different names.  Raul Cruz was advised of his *Miranda* rights and signed an Advise of Rights form in Spanish.  Mr. Cruz admitted to using false identification cards, to being aware of the Georgia warrant, that his true name is Raul Cruz, and that his room was the master bedroom.  Mr. Cruz denied that there were drugs or weapons in his home.  Agents, however, found a white crystal-like substance inside the home in the bedroom closet that field tested positive for methamphetamine.  Mr. Cruz subsequently admitted to possessing the methamphetamine located at the residence, to knowing it was illegal, but said the other two men were not involved.

On April 27, 2010, a federal grand jury indicted Defendant for unlawfully, knowingly and intentionally possessing with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine on or about March 29, 2010.  The United States subsequently superseded the indictment to charge Defendant with a single count of possession with intent to distribute methamphetamine on or about March 29, 2010, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2.

## II.   Defendant's Motion in Limine Concerning Field Tests of Alleged Controlled Substances (Doc. 27)

Defendant asks the Court to instruct the Government not to mention, refer to, or to attempt

to elicit evidence of the field tests that were positive for methamphetamine, until a hearing is held outside the presence of the jury to determine whether: (1) the witness has personal knowledge of such facts, (2) the field tests meet the *Daubert*[3] admissibility standard, (3) the witness offering such testimony is qualified as an expert, (4) the evidence is cumulative of other evidence, and (5) the probative value of the evidence outweighs its prejudicial effect.  The United States plans to call Albuquerque Police Department ("APD") Chemist Guy Walton to testify that the compound seized from Mr. Cruz's home was methamphetamine, to the practices of APD's laboratory, and to the accuracy of field drug tests.  The Government also wants Drug Enforcement Administration ("DEA") Agent David Smith to testify, among other things, that based on his training and experience, drug field tests are accurate.  The United States argues that its evidence of field test results are admissible and that it will present evidence that such field drug tests are reliable.

The Court directs that, until a hearing is held to determine the relevance and reliability of the field test evidence, the United States must not mention, refer to, or attempt to elicit evidence of the field tests.  Before or during trial, the Court will hold a hearing to determine the admissibility of such evidence.  The hearing may, however, be held in the presence of the jury during trial.  Defendant's motion in limine will therefore be granted in part.

### III.   United States' Notice of Intent to Offer Evidence Pursuant to Rule 404(b) and Request for Pretrial Ruling on the Government's Request to Admit Evidence (Doc. 34)

The Government seeks to admit evidence of the alleged controlled drug transaction that occurred between the CI and someone in the Ghost Ranch home, without the testimony of the CI, limiting the testimony predominantly to what the officers observed.  The Government states that it will not submit testimony about what the CI said occurred in the house.  Instead, the officers will

---

[3]*See Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

testify to the steps Detective Villegas took to conduct the controlled buy.

Evidence of other crimes may not be offered to prove bad character or conformity with prior bad acts, but evidence of other crimes may be offered to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The Tenth Circuit has established four requirements for admission of evidence under Rule 404(b): (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the evidence's probative value must not be substantially outweighed by its unfairly prejudicial effect; and (4) the trial court must give jury instructions on the proper purpose of the evidence if requested. *United States v. Fitzherbert*, 13 F.3d 340, 343 (10th Cir. 1993).

The evidence proffered regarding the controlled drug purchase is offered for the purpose of showing Defendant's intent to distribute and absence of mistake or accident. The Court concludes, however, that the relevance of the controlled buy is very slight compared to the substantial prejudicial effect. Without testimony of the CI, the evidence of the prior transaction only links the Ghost Ranch home to the alleged drug transaction with the CI, not to any participation by Defendant. The Government has not even proffered that the officers can testify, based on their personal observations, that Defendant was present in the Ghost Ranch home at the time of the alleged drug transaction. The evidence of the controlled buy, without a direct link to Defendant conducting the transaction with the CI, or even being present, is thin evidence that Defendant had the intent to distribute the drugs found on March 29, 2010. In contrast, the prejudice to Defendant in admitting the evidence is great. The evidence is likely to mislead or confuse the jury. Moreover, the United States, while not seeking to introduce testimonial statements of the CI, in effect hopes that the jury will make the inferential leap that the CI implicated Defendant to the officers. Under this scenario, Defendant would not have the opportunity to cross examine the CI or to even attempt

5

to interview him, given the Government's efforts to resist disclosing his identity.  Admission of the Rule 404(b) evidence thus would create the danger of unfair prejudice.  Because the Rule 403 balancing test weighs in favor of excluding the evidence, the Court will deny the United States' request for a pretrial ruling allowing the admission of the evidence.

## IV.  Defendant's Motion to Disclose Confidential Informant and Memorandum in Support Thereof (Doc. 26)

Defendant requests an order compelling the Government to disclose the true identity and location of the CI who supplied information to Detective Villegas or dismissing the action if the Government refuses to disclose the requested information.  Defendant gives the following reasons to support disclosure:  the CI's testimony may be material to refute the Government's proof of probable cause, the CI may be an actual participant in similar Rule 404(b) acts, and the CI may be a competitor who harbors ill will against Defendant or who is subject to similar prosecution and was attempting to obtain more favorable treatment by cooperating.  The Government opposes the motion, arguing that Defendant has not met his burden to show that the CI's identity is relevant and helpful to the defense, sufficient to overcome the Government's privilege to withhold such information.

The government has a privilege to withhold from disclosure the identity of informants in order to protect the public interest in effective law enforcement.  *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."  *Id.*  The scope of the privilege is limited.  *Id.* at 60. For example, contents of the communications are not privileged where they will not reveal the identity of the informer, and the privilege does not apply once the identity of the informer has been

disclosed to those who have cause to resent the communication. *Id.* Similarly, where "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. To determine whether the privilege applies, the court must balance the public interest in protecting the flow of information necessary for effective law enforcement against the defendant's right to prepare his defense. *See id.* at 62. The court should consider the particular circumstances of the case, including the crime charged, the possible defenses, and the possible significance of the informer's testimony. *See id.* (determining there was error in court's permitting government to withhold identity of informer where informer was sole participant, other than accused, in transaction and another witness testified that informer denied ever before having seen accused).

      The Tenth Circuit has described the balancing of interests as follows:

> [C]ases involving confidential informants fall into several broad categories. At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases such as *Roviaro* itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial. In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant.

*United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992) (quoting *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990)). While an informant's identity should be disclosed if it might be relevant to the defendant's case and justice would best be served by disclosure, an informant need not be disclosed where the informer's information is merely cumulative or where the informant did not participate or witness the crime in question. *See United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000-01 (10th Cir. 1992) (citing *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986)). "When it is clear the informant

7

cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure." *Martinez*, 979 F.2d at 1429.   A defendant seeking disclosure has the burden of proof to show a need for the disclosure. *United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir. 1997); *Martinez*, 979 F.2d at 1426.   Mere speculation about the usefulness of an informant's testimony, however, is insufficient to compel disclosure. *Mendoza-Salgado*, 964 F.2d at 1001.

The charged crime is the alleged discovery by officers of methamphetamine in Defendant's bedroom on March 29, 2010.  The CI was not present during the execution of that search.  Although the CI is the sole participant in the prior controlled buy, that evidence will not be admitted at trial. Nor would any information the CI had concerning the Defendant's intent to distribute, or lack thereof, or the Defendant's presence or absence in the Ghost Ranch home at the time of the controlled buy shed light on Defendant's intent to distribute on March 29, 2010.  Given the Court's exclusion of mention of the controlled buy at trial, Defendant's general requests for information on the CI thus amount to nothing more than mere speculation as to its usefulness to his defense. Defendant has not met his burden to show that the disclosure of the CI's identity is sufficiently helpful to his defense to overcome the important public interests underlying the privilege.  *See United States v. Mathis*, 357 F.3d 1200, 1208 (10th Cir. 2004) (affirming denial of motion to compel identities of two particular confidential informants because defendant showed nothing more than speculation that any inconsistencies in observations were helpful to defense); *Martinez*, 979 F.2d at 1428 (affirming denial of motion to disclose informant, because court found that informant was unable to corroborate defendant's theory of entrapment); *Mendoza-Salgado*, 964 F.2d at 1001 (upholding denial of informant's disclosure, even though defendants asserted that informant was critical to entrapment defense, because value of testimony was speculative at best).

8

As to whether the CI's identity is potentially helpful to the issue of whether there was probable cause supporting the search warrant, Defendant has not challenged the validity of the warrant. To warrant a *Franks* hearing, Defendant must show that the affiant "knowingly and intentionally, or with reckless disregard for the truth" included false statements or omitted material facts, and that the statements were necessary to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). When a search warrant affidavit is sufficient on its face to establish probable cause based on the totality of the circumstances, there is generally no need "to reveal the identities of the individuals providing information to the police; hearsay from unknown or unnamed individuals has been recognized as acceptable support for a finding of probable cause." *Mathis*, 357 F.3d at 1205. Regarding the defendant's burden to show that any potential inaccuracies in an affidavit are deliberate falsities on the part of an affiant, "'[i]t is not enough to show that the informant lied to an unsuspecting affiant, or that an affiant's negligence or innocent mistake resulted in false statements in the affidavit.'" *United States v. Owens*, 882 F.2d 1493, 1499 (10th Cir. 1989). Thus, affidavits which attack the informant's reliability and the correctness of the informant's statements do not meet the substantial preliminary showing of falsity required by *Franks. Id.* As long as the affidavit reflected what the affiant believed to be true, the warrant was properly issued.

"When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). Information received from a confidential informant "may be corroborated through the arrangement of a controlled purchase at the suspect location." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004). In *Artez*, the Court explained with approval the particular method by which law enforcement officers should proceed with a controlled purchase in order to assure the reliability of the information underlying the affidavit. Specifically,

9

> [t]he common formalities observed by police officers when conducting such
> controlled purchases are as follows: the police search the informant (and his vehicle,
> if appropriate) for money and contraband prior to the buy; give the informant money
> with which to purchase the narcotics; transport the informant to the suspect residence
> (or follow the informant to the residence); watch the informant enter the suspect
> residence, disappear while inside the suspect residence, and emerge from the suspect
> residence; search the informant upon exiting the suspect residence; and receive the
> narcotics from the informant.

*Id*. at 1111-12. The Court continued, "the absence of constant visual contact with the informant conducting the transaction does not render a controlled purchase insufficient, nor does the absence of an audio-recording of the transaction." *Id*. at 1112.

In *United States v. Nelson*, 450 F.3d 1201 (10th Cir. 2006), the Tenth Circuit examined the affidavit underlying a warrant and concluded that because the protocol approved in *Artez* was substantially followed, a *Franks* hearing was not warranted. The Court stated, "[w]e conclude that such information does not warrant a *Franks* hearing in this instance because when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." *Id*. at 1214 (*quotations omitted*). The Court further stated," "[s]o long as these common formalities are observed to a substantial degree, the corroborative value of such a controlled purchase is not significantly diminished by the type of background facts alleged here regarding the informant's veracity or credibility (such as the informant's criminal record, drug use, or history of mental illness)." *Id*.  Further, "[g]iven the level of independent corroboration provided by the police surveillance of the confidential informant's controlled buys in this case, the addition of negative information about [a] confidential informant's credibility or veracity would not change the outcome because it does nothing to defeat a showing of probable cause. Consequently, no valid purpose is served by holding a *Franks* hearing . . . " *Id*.

At this point, Defendant has not shown that  the agents lacked independent corroboration of

the CI's information.  Defendant has thus not made a sufficient showing that the CI's identity must be disclosed because of its relevance to a defense attacking the warrant or for any other reason. Defendant's motion to disclose the CI's identity will therefore be denied.

**IT IS THEREFORE ORDERED** that:

1.      Defendant's Motion to Disclose Confidential Informant and Memorandum in Support Thereof (**Doc. 26**) is **DENIED**;

2.      Defendant's Motion in Limine Concerning Field Tests of Alleged Controlled Substances (**Doc. 27**) is **GRANTED** to the extent a hearing will be held, but it may not be outside the presence of the jury; and

3.      The United States' "Notice of Intent to Offer Evidence Pursuant to Rule 404(b) and Request for Pretrial Ruling on the Government's Request to Admit Evidence" (**Doc. 34**) is **DENIED**.

_____

SENIOR UNITED STATES DISTRICT JUDGE